ELIHU CHAUNCEY, trustee, *vs.* JOSEPH G. FRANCIS, administrator, & others.

Suffolk.    March 17, 1902. — May 23, 1902.

Present: HOLMES, C. J., KNOWLTON, MORTON, HAMMOND, & LORING, JJ.

*Devise and Legacy*, Construction.

A will contained the following bequest: " I give and bequeath to my brother Stephen Salisbury the sum of one thousand dollars, in trust, for my nephew Samuel Salisbury, to invest the same and pay the interest of the same to said Samuel or expend the same for his benefit as said trustee may deem best, and with full power to expend any part or the whole of the principal sum for the benefit of said Samuel, said trustee to be accountable to no one, for the administration of the trust, and not to give bonds." This was preceded and followed in the will by a number of simple absolute bequests of sums of money.  In the rest of the will this $1,000 was not mentioned again.  In the clauses relating to real

estate, equitable estates for life with remainders in fee were created by apt and appropriate language. The will concluded with a residuary clause. *Held,* that Samuel Salisbury was the sole equitable owner of the fund subject to the directions as to its management during his life, and that on his death it went to the representative of his estate and not to the residuary legatee.

BILL FOR INSTRUCTIONS, filed December 3, 1901, by the trustee under the will of Ann G. Salisbury, as to the interpretation of a bequest for the benefit of Samuel Salisbury.

The case came on to be heard before *Morton,* J., who, with the consent of the parties, reserved it upon the bill, answers and a copy of the will for the consideration of the full court; such decree to be entered as equity and justice might require.

The fifth clause of the will, which contained the bequest in question, was as follows:

" I give and bequeath to my brother Stephen Salisbury the sum of one thousand dollars, in trust, for my nephew Samuel Salisbury, to invest the same and pay the interest of the same to said Samuel or expend the same for his benefit as said trustee may deem best and with full power to expend any part or the whole of the principal sum for the benefit of said Samuel, said trustee to be accountable to no one, for the administration of the trust, and not to give bonds."

The character of the rest of the will is described by the court.

*R. B. Stone,* for Blanche L. Salisbury and Joseph G. Francis, administrator.

*E. N. Jones,* for Theodore S. Woolsey and Elihu Chauncey, executors and trustees under the will of Daniel W. Salisbury.

HAMMOND, J. The sole question is what interest did Samuel Salisbury have in the trust fund created by the fifth clause of the will. It is contended by the representatives of his estate that he had the complete beneficial interest in the fund, and that the various provisions as to the trust merely limit his use and enjoyment of it during his life; while on the other hand the executors of the will of Daniel W. Salisbury, the residuary legatee, contend that the interest was simply an equitable life estate.

We are brought to the consideration of this question without any knowledge respecting the situation at the time the will was made, and hence our decision must be based substantially upon such things as appear upon the face of the will and codicil, and

upon such inferences of fact as fairly may be drawn therefrom. The testatrix having determined to make a will, enters upon the task. She is a single woman, apparently somewhat advanced in years. She has brothers, sisters, nieces and nephews. She possesses in her own right estate both real and personal, and she also has under her father's will a power of appointment over certain other real estate. She begins with legacies of personal property. In the second, third and fourth clauses of the will she gives various legacies of money to her brother Stephen, and to several nieces and nephews, respectively. The language in which each of these legacies is given is very brief and simple. As an illustration of this, the bequest immediately preceding the one in question may be quoted: "I give and bequeath to my nephew Elihu Chauncey the sum of one thousand dollars." She then comes to her nephew Samuel Salisbury. All the preceding bequests she has made absolute, but as to Samuel she thinks differently. She is willing to give him an interest in $1,000, but for some reason is not inclined to let him have the control of it. She decides to place the money in the hands of her brother Stephen, not for himself, but in trust for Samuel. She says that Stephen may pay the interest to Samuel or expend the same for his benefit as Stephen may deem best. So much as to the income. As to the principal, she is not willing that any part of it shall be paid to Samuel, but is willing that even the whole of it may be expended for his benefit if Stephen chooses to do it. Having made this provision as to Samuel, she says no more about this $1,000 but proceeds to give in the next four clauses of the will legacies of money to individuals in the same brief language as in the clauses preceding the clause in question. She then in several subsequent clauses goes on to dispose of certain personal and real estate held by her in her own right and of certain real estate over which she has the power of appointment, and closes with a residuary clause in favor of her brother Daniel. In the clauses respecting real estate she creates by apt and appropriate language legal and equitable estates for life and provides for the disposition of the remainder in fee, and there is no reason why she should not have used similar language for the disposition of the remainder of the trust fund created in the clause in question if

she had intended that the interest in the whole of the fund should not pass to her nephew Samuel.

Reading the clause in question in connection with its position in the will and in the light of the whole will, including the fact that there is no specific bequest over of the fund remaining at the death of Samuel, we think that the most natural interpretation of it is that the $1,000 was set apart to be held upon a general trust for Samuel; that he was the sole equitable owner of the fund, and that the directions to the trustee were for the management of the trust during the lifetime of the beneficiary. It follows that the fund goes to the representative of his estate. See *Fay* v. *Phipps*, 10 Met. 341.

*So ordered.*