E. SOHIER WELCH *vs.* SYLVESTER BROWN, administrator, & others.

Suffolk.     May 18, 1933. — June 28, 1933.

Present: PIERCE, FIELD, DONAHUE, & LUMMUS, JJ.

*Trust*, Resulting, Distribution, Income.   *Gift.*

The will of a woman who died in 1886 set up a trust to pay the income to the testatrix's brother during his life, and then to the brother's widow during her life, and then to children of the brother living both at the testatrix's death and at the death of the widow, during the lives of such children; and, at the death of each such child, to distribute a certain portion of the principal among the surviving children of the testatrix and issue of her deceased children. The brother died before the testatrix. Shortly after the testatrix's death, her five children, believing that she had intended to make further provision for her brother and his family and "to carry out the wishes, and intentions" of the testatrix, paid, by equal contributions, an additional sum to the trustee with instructions that such sum, "for . . . [the brother's widow] and children, may be held in trust . . . or paid over to . . . [the widow], at the discretion of said" trustee. Such supplementary fund was kept separate at all times from the property of the trust under the will. One child of the brother survived his widow. The income of the supplementary fund was paid to the widow during her

life and to such child during his life. At the death of such child, two children of the testatrix had died without issue, two had died leaving issue, and one was alive. Upon a petition then filed for instructions as to the disposition of the supplementary fund, it was *held*, that

· (1) The establishment of the supplementary fund did not constitute a gift of an absolute and inheritable interest therein to the brother's widow or to the widow and her children, subject to a trust during the lives of the donees; and the estate of said child of the brother was not entitled to the supplementary fund;

(2) The donors of the supplementary fund did not intend to make it a mere addition to the trust under the will, nor apply to the supplementary fund all the limitations governing that trust; the limitations respecting distribution after the termination of the life estates were not applicable to the supplementary fund;

(3) Distribution of the supplementary fund therefore was not to be confined to the child of the testatrix living at the death of the child of the brother, the last life beneficiary, and to the issue of the two children of the testatrix who had predeceased the brother's child leaving issue;

(4) At the death of the brother's child, a resulting trust of the supplementary fund arose in favor of the child of the testatrix who survived the brother's child and of the estates of the four children of the testatrix who predeceased the brother's child; and distribution should be made accordingly;

(5) Income of the supplementary fund which had accrued up to the time of the death of the brother's child should be paid to that child's personal representative.

BILL IN EQUITY, filed in the Supreme Judicial Court for the county of Suffolk on August 4, 1932, for instructions as to the disposition of a fund known as "Supplementary Trust N. H. Brown & os" described in the opinion.

The suit was heard by *Donahue*, J. The five children of Esther E. Beebe were Emily B. Beebe, who died without issue in 1916; E. Pierson Beebe, who died without issue in 1926; J. Arthur Beebe, who died in 1914, leaving his son C. Philip Beebe; Frances L. Fiske, who died in 1890 leaving a son, George S. Fiske, and a daughter, Esther F. Hammond; and Frank H. Beebe, who died November 20, 1932, and the executors of whose will were admitted as respondents. The executor of the will of Frances L. Fiske had died and no personal representative had been appointed to succeed him. Other material facts are stated in the opinion.

By order of the single justice, a final decree was entered directing that said fund be distributed as follows: one fifth to the administrator of the estate of Emily B. Beebe, one fifth to the executors of the will of E. Pierson Beebe, one fifth to the executor of the will of J. Arthur Beebe, one fifth to the executors of the will of Frank H. Beebe, and one tenth each to George S. Fiske and Esther F. Hammond, as "heirs at law and residuary devisees under the will of Frances L. Fiske"; and directing that the income of the fund which had accrued up to the death of Mary Van Arnam Brown should be paid to the administrator of her estate. Certain respondents appealed.

*H. H. Meyer*, stated the case.

*R. G. Wellings*, for Sylvester Brown, administrator.

*G. P. Davis*, for E. Sohier Welch and another, executors, and others.

*C. P. Curtis, Jr.*, (*G. E. Brown* with him,) for William S. Hall, executor.

Lummus, J. Esther E. Beebe died on April 2, 1886, three days after the death of her brother N. Huntington Brown. By her will she left to her son E. Pierson Beebe, as trustee, $20,000, to pay the income to N. Huntington Brown for life and then to his wife Sarah Brown for life, and at the end of these life estates "to pay over said income in equal shares to such of the children of said N. Huntington Brown, who are living at my death as shall then be living, during their natural lives, and upon the death of each of said children, it is my will, that the portion of the trust fund created by this article, which corresponds to the share of income received by such child during his or her life, shall be divided equally among my children, then surviving, provided that the issue then living of any of my children, who may have died, shall have and take by right of representation the same share thereof which such issues deceased parent would have taken if living." Sarah Brown, the widow of N. Huntington Brown, survived the testatrix, and died December 1, 1902. Two children of N. Huntington Brown survived the testatrix, Edwin S. Brown, who died August 26, 1898, and Mary Van Arnam Brown,

who died March 30, 1932. It will be observed that under the will the income of the fund became payable to Sarah Brown until her death on December 1, 1902, and after that to Mary Van Arnam Brown until her death on March 30, 1932.

After the death of the testatrix, in 1886, her five children, believing that the testatrix had intended to make a further provision for her brother N. Huntington Brown and his family, contributed equally to a fund of $5,000 which was placed in the care of E. Pierson Beebe and was called the "Supplementary Trust N. H. Brown & os." The principal of the fund now amounts to about $10,000. A writing executed on June 24, 1886, by four of the five children of the testatrix, recited that the testatrix intended to make a later will increasing the trust fund of $20,000 for N. Huntington Brown and his family to $25,000, and continued: "As no will was made, increasing the legacies to N. H. Brown and family . . . and in order to carry out the wishes, and intentions of our Mother . . . We, the children of Esther E. Beebe, and beneficiaries under her will, propose to contribute the money necessary, to carry out the objects herein described, and we each, and severally, hereby agree to pay to E. Pierson Beebe, on demand, to be used by him, for the purposes described one fifth part of the several sums following, Viz. Sarah Brown (widow of N. H. Brown) & her children $5000. . . The five thousand dollars, for Mrs. Sarah Brown and children, may be held in trust by said E. Pierson Beebe, or paid over to Mrs. Brown, at the discretion of said E. Pierson [Beebe]." By a letter to E. Pierson Beebe the remaining one of the five children assented to the payment of her proportionate part, and it may be inferred that she knew of the writing aforesaid and joined in its terms. The assets and the accounts of this "Supplementary Trust" were always kept separate from those of the $20,000 trust under the will, except that in recent years the same bank account has been used for both funds. The income of this "Supplementary Trust," like the income of the testamentary trust, was paid to Sarah Brown until her death on December 1, 1902, and after that to Mary

Van Arnam Brown until her death on March 30, 1932. The present bill for instructions concerns the distribution of the "Supplementary Trust" fund.

Of the five children of the testatrix, two had died without issue before the termination of the life estate of Mary Van Arnam Brown on March 30, 1932. Two more had died leaving issue, the issue of one being George S. Fiske and Esther F. Hammond, and the issue of the other being C. Philip Beebe. Only one of the five children, Frank H. Beebe, survived the life tenant, and he died November 20, 1932.

The three grandchildren of the testatrix contend that the "Supplementary Trust" fund should be distributed in accordance with the provisions of the will, as though added to and made a part of the testamentary trust, with the result that Frank H. Beebe or his estate would get one third, C. Philip Beebe one third, and George S. Fiske and Esther F. Hammond one sixth each. The executors of the will of Frank H. Beebe join in this contention. The executors of the wills of E. Pierson Beebe and of Emily B. Beebe, who died without issue before the termination of the life estate of Mary Van Arnam Brown, contend that there is a resulting trust as to the "Supplementary Trust," and that the fund should be divided into five parts and paid to the personal representatives of the original settlors. The administrator of the estate of Mary Van Arnam Brown, however, contends that there was a complete gift of an absolute and inheritable interest to Sarah Brown and her children of whom Mary Van Arnam Brown was the survivor. Mary Van Arnam Brown was the sole heir at law and next of kin of her mother and brother. The single justice decided that there is a resulting trust for the personal representatives of the five original settlors, and entered a decree accordingly. The administrator of the estate of Mary Van Arnam Brown, the executors of the will of Frank H. Beebe, and the three grandchildren of the testatrix, severally appealed.

We will consider first the contention of the administrator of the estate of Mary Van Arnam Brown. Although

E. Pierson Beebe was authorized to pay the supplementary fund over to Sarah Brown at his discretion, the settlors may have meant that she was merely to take his place as trustee. Her children were intended beneficiaries equally with herself. In that view, the authority or discretion to pay over the fund to her has little significance as to the nature of the beneficial interests created. If regarded as a power to terminate the trust by gift to Sarah Brown, it was never exercised, and has no tendency to show that without an exercise of the power there was a completed gift of an inheritable interest to Sarah Brown, to the exclusion of her children who, by the terms of the writing, were to share the beneficial interest with her, or to Sarah Brown and her children, the latter of whom were not possible payees of the fund under the discretionary power given to E. Pierson Beebe. It is unlikely that the five children of the testatrix, in making voluntary contributions in lieu of an intended but never validated legacy, meant to create inheritable interests which would not return to the family of the testatrix, whereas the intended legacy was of a life estate only, with remainder to the family of the testatrix. We think that there was no gift of an absolute and inheritable interest subject to a trust during the lives of the donees, such as was found in *Powers* v. *Rafferty*, 184 Mass. 85, and *Hayward* v. *Rowe*, 190 Mass. 1, and cases therein cited. See also *New England Trust Co.* v. *Scheffey*, 265 Mass. 515. The case falls rather within *Cavan* v. *Woodbury*, 240 Mass. 125, 127, *Megathlin* v. *Stearns*, 242 Mass. 326, *Small* v. *Bellamy*, 249 Mass. 244, and *Sherwin* v. *Smith*, 282 Mass. 306.

We likewise are unable to adopt the more plausible contention of the grandchildren and the executors of the will of Frank H. Beebe, that the donors of the supplementary trust fund adopted for that fund all the limitations of the will governing the $20,000 fund. The general purpose of the settlors was to provide a substitute for an additional $5,000 intended to be added to the $20,000 testamentary trust. But the obligation of honor that they recognized was that of providing additional income for Sarah Brown

for her life, and after her for her children during their lives. It may well be inferred, and this is confirmed by the practical construction of all the parties through the years, that the life estates in the supplementary trust followed the limitations of the testamentary trust. *Eustace* v. *Dickey*, 240 Mass. 55, 72, 73. *Temple* v. *Russell*, 251 Mass. 231, 236. *Bemis* v. *Fletcher*, 251 Mass. 178. *Matter of Rausch*, 258 N. Y. 327. Compare *Nickerson* v. *Harding*, 267 Mass. 203, 206. But when we come to the distribution of the remainder after the life estates have ended, the natural consequence is a resulting trust unless a contrary intention appears pretty clearly. The settlors doubtless felt no moral obligation to let the remainder, coming back into their own families, follow the fortunes of the remainder under the testamentary trust. If they had intended that, the simplest way would have been to pay the $5,000 into the testamentary trust as a gain or increment, and have done. Instead of that, the two funds were carefully kept separate. We do not, however, attribute too much weight to this consideration, for we are mindful that in 1886 and until the State income tax law was adopted in 1916, a secret trust had advantages over one that might be the subject of a probate accounting, for stocks and bonds were taxable on their selling value at the local rate for property in general, which sometimes took half their income, and the system in its practical operation might be described as confiscation tempered by concealment. Pub. Sts. c. 11, § 20. R. L. c. 12, § 23. *Opinion of the Justices*, 195 Mass. 607, 614; 208 Mass. 616; 220 Mass. 613. *Perkins* v. *Westwood*, 226 Mass. 268. *Tax Commissioner* v. *Putnam*, 227 Mass. 522. But on the whole, we are unable to find an intent to adopt completely the provisions of the testamentary trust. The discretionary power to E. Pierson Beebe to pay the supplementary fund over to Sarah Brown, however it may be viewed, is inconsistent with an intent that the supplementary fund should be a mere addition or appendage to the other.

The result is, we think, that the single justice was right in deciding that there is a resulting trust for the several

personal representatives of the five settlors. He was right, also, in apportioning the income between the life tenant and the remaindermen. G. L. (Ter. Ed.) c. 197, § 27. *Welch* v. *Apthorp*, 203 Mass. 249. *McElwain* v. *Hildreth*, 203 Mass. 376. The final decree is affirmed, subject however to further consideration of the matter of allowing additional costs as between solicitor and client, which may be determined by a single justice. *Boynton* v. *Tarbell*, 272 Mass. 142.

*Ordered accordingly.*